Mr. Morris, you had four arguments, but today we've changed the order to combat the fact that your partner has another argument for another panel. So our first case will be a number of 20 of us, and it will just be one Morris v. DVA. Thank you very much. In the case of court, the attorneys are bearing up to half a minute to write more. Mr. Morris deals with the decision of the veterans' courts, which deals with the applicability of the statutory presumption of a sound condition under Peruvian U.S.C. section 1111 to a VA regulation under Peruvian CFR 3.303-C. The court, although relying upon its precedent in Winn, concluded that the presumption under 1111 certainly does not apply to the provisions of section 3.303-C. We believe that that is a case of law. Specifically, the VA regulation is entitled, Pre-Service Disabilities Noted in Service. By the very nature of that title, there must be a pre-service disability. Just one question. You, to a significant extent, and the government, to a limited extent, rely on these VA general counsel things. To what extent, then, are we bound by those? Well, what definition would you give to them to put that right? To the reasonableness of that interpretation. And to that extent, well, this court finds that that interpretation is reasonable. And clearly, the facts in those general counsel cases deal with different conditions from personality disorder. This case deals with personality disorder. And there are specific provisions or specific language within 3.303-C that addresses personality disorder in particular. Now, one question before we get to that real quick. I'm sorry. Is your position that the VA is bound by general counsel's opinion in litigation before the Board or the Court of Appeals is better explained? The Board is, Your Honor, by statute. Whether or not the VA can alter that position when they get to court, I'm not sure there's any clarity in the case law as to whether or not they're free to do that. I'll let you go on your point. I just wanted to ask you that. So you're saying that the general counsel's opinion is not about to show on that? I do not believe they are, Your Honor. But we have two regulations here, which I think were adopted at different times, 4.9 and 3.303. They don't seem to be entirely consistent. Could you address that? I'm not sure I'm prepared to address that, Your Honor. I apologize. I hadn't thought about the difference in the language between 4.9 because, in this case, the Court specifically relied on 3.303-C and did not get to 4.9. So I apologize. It seems to me that the question in this case is, in particular, when the court below says that the conditions described within a specific regulation preclude the application of the presumption of silence, is that or is that not a correct statement of law? I do not believe that that can be a correct statement of law for two reasons. First, the statute supersedes the regulation, and more importantly, the regulation itself speaks to the nature of the need for the establishment of the presumption of silence. Because in the title, it says, pre-service disability is noted in service. There's only two ways that a condition can be determined to have been in existence prior to service, and that is it's either noted at the time of entrance to service in the examination or it's not. If it's not, then Section 1111 applies, and the presumption of silence must be afforded to every veteran. If the condition was noted at entrance, then we're dealing with the presumption of aggravation, and we are starting where the regulation starts, with a pre-service disability that was noted at entrance, and therefore the measurement is one of aggravation. The VA general counsel's opinion speaks to the question of aggravation, but in this case, we're dealing with the presumption of silence and the relationship between that evidentiary burden, which shifts to the VA when there is not a condition noted at entrance. And essentially what the court below did, and what the agency did below, was rely exclusively on the mere presence of a condition which might have been a personality disorder, which was noted in service. As such, there was a finding in 88 that he had a personality disorder in service, correct? Now that finding, given that we're in the setting of a new claim here, don't we have to go with that factual finding, accept that as a fact, that he had a personality disorder in service? Correct. And the regulation 4.9 says that personality disorder, et cetera, is not a disease or injury in the meaning of a clinical legislation for disability compensation, for instance. And as I understand it, what the government argues is that, okay, he had it in service, personality disorder, notice me about that, and the regulation says that that's not compensable, whether it was there before or after, hence you don't even get into this whole issue of presumption. And that goes to the very question of what is the condition that he is seeking compensation for? He is seeking compensation for his psychiatric disability. That psychiatric disability was described in terms other than a personality disorder at that time, and the presumption of soundness would have changed the dynamic completely and precluded such an exclusion of entitlement compensation based upon personality disorder merely because it was noted in service. The noting of that condition in service is not enough. It has to be shown under the very definition of- And if this were a direct appeal of the initial determination that I think you would be correct, this is a due claim which seeks to revise based upon an error of law. Was the law correctly applied? And the law was not correctly applied because he was entitled to the benefit of the presumption of soundness. The presumption of soundness precludes relying strictly upon what was noted in service. You have to be able to relate that to what occurred prior to service. How is that a question of the law? You're disputing whether they were correct in that he had a personality disorder. Your argument is he shouldn't have found that. He should have been entitled to the presumption of soundness because there was no evidence of pre-service personality disorder. And therefore, the ultimate conclusion of the personality disorder is that it was not correct. With respect, Your Honor, I am not arguing about what they decided about what happened in service. I'm arguing about whether that determination alone was a sufficient legal basis to deny compensation. You're relying on the language of 303 itself. Correct. It talks about a personality disorder shown to have existed prior to service. It's non-compensable if it was shown to have existed prior to service. That is correct. So what you're saying is the definition of personality disorder in 4.9 is affected by 303. And the non-compensable personality disorder exists only if it is shown to have existed prior to service. Yes. And then you take the leap and say it has to be shown to have existed prior to service. Then the presumption should apply. That's absolutely correct, Your Honor. And more importantly, the DA's own language is what defines the personality disorder. It describes it in terms of a lifelong pattern of action or behavior. It describes it in terms of symptomatology shown to have existed prior to service with the same manifestations during service. That's their language, and they must be held to account for that language. They can't simply go to the end result and say, because something is described as a passive-aggressive personality, that that qualifies as an excluding personality disorder. That was the diagnosis that was in service. Yes, they made that finding, but that finding is precluded by the DA's own definition of what constitutes a personality disorder. I see that I'm approaching the end of my time. I'd like to reserve the balance unless there's further questions. All right. Thank you. Thank you, Your Honor. Ma'am, please report. The Veterans Court correctly affirmed towards the 2008 decision, finding no clear evidence that were to use over about 4.9, the relationship with 3.03. 3.03 tells what a personality disorder is for purposes of 4.9. Your Honor, I don't really see any significant differences between 4.9 and 3.3 or 3.8. I think they're both saying that a personality disorder is not compensable or is not an injury or disease in 3.3.8. Yeah, but doesn't 3.03 suggest that a non-compensable personality disorder has to be shown to exist at the time of service? I don't think so, Your Honor. There's a couple of reasons for that. First of all, the definition of a personality disorder is not set forth in Section 3.3.3a. It's set forth in the DSM-IV pursuant to the CFR Section 4.125. Second of all, the language in Section 3.3.3. Where did you say the definition of a personality disorder is set forth? In the DSM-IV. And where does it say a personality disorder is? Well, it's about four pages long. It's actually attached to our brief there. It has a number of characteristics. And notice that it's actually in tab 5, which is the last tab of our brief, the whole section there. But it's incorporated by Section 4.125 of the regulations, which said that the DSM-IV was for all diagnosis. Well, I think the language in Section 3.3.3.3a is saying, essentially, it's not clear on paper, first of all, but I think it's really saying this is why we are concluding that a personality disorder is not an intrusion. It's basically given the rationale. Don't worry, it's just given the rationale. That sentence is the next-to-last sentence, which is given in the definition.  Yes. It's basically the rationale for why the VA concluded that a personality disorder is not an intrusion. For example, in the Terry case, this court went through an extensive analysis about presbyopia or retraction.  It says that a personality disorder is not a fraud. It believes that the showing of pre-service origin seems to be a requirement here. I wouldn't have those personalities. I would say it's a characteristic of the regulation, but not a requirement. That's my next point, is that I disagree with Mr. Morris' reading of that regulation, of that sentence of the regulation. If you turn to that sentence, it says, in the field of mental disorders, personality disorders, which are characterized by. It's not saying we define it by. It's saying we are characterized by. And then it goes on to say by. I disagree with the fact that the personality disorder is a characteristic of pre-service origin. You have a pre-service origin seems to be a requirement. Well, that's the conclusion that you reach if it is a personality disorder. I was looking at whores. If you look carefully at the whores that appear in that sentence, it says they're characterized by, A, developmental defects, or B, pathological trends in the personality structure mapped as by. And then it goes on to list three different things that can characterize that. But it can be either developmental defects or pathological trends in the personality structure manifested by either, A, a lifelong pattern of action or behavior, or B, chronic psychoneurosis of long duration, or C, a most psychiatric symptomatology shown in the district prior to service, or any of those, either A, B1, B2, or B3, which were based in certain ways, will be accepted as showing pre-service origin. So it's basically saying that if you have a personality disorder, we will assume that it has a pre-service origin. And that leads to the last sentence, which is, because of this reasoning, because personality disorders are characterized in this way, they are not injuries or diseases in the meaning of the act. That's what I believe that last sentence is there for. Because actually I've been construed by the VA in that way. Yes, I believe that. Well, Mr. Carpenter suggested that these general counsel opinions are consistent with that. Well, I do think that those general counsel opinions, whatever the chevron, that certainly are binding to certain regulations. I believe they're certainly relevant in the VA's instruction and regulation. But these general counsel opinions not only don't support Mr. Morris's submission. One doesn't have it. The second one actually supports our instruction. So we're not defensive at all about these general counsel opinions. I think they support it. The first one, which is 6790, actually says that hereditary diseases, the presumption does apply to them. But by definition, a personality disorder is not a hereditary disease. It's not a disease of any kind, including the hereditary disease. The second opinion puts the two together, which is 8290. The second opinion says that diseases and defects are mutually exclusive. The second opinion says that clearly hereditary diseases are not defects. And defects, just like personality disorders, I think personality disorders are probably a subset of defects. They're not injuries or diseases in the act. So the general counsel opinions support it. They know that we're not being consistent with those assumptions. What is your view of the connection or how – well, let me ask this one. How, in your view, do 3.03C, which you've been discussing with Judge Dyke, and 4.9 work? I see them as entirely consistent with each other. There's only a third one on that, which is 4.127. 1.25 is the one that incorporates the DSM-IV, but 1.27. But I see them as consistent. The only real difference I see with 4.9 is that it is directed to the next step, which is saying that it's not compensable, that personality disorders are not compensable. Did I understand in my discussion with Mr. Carpenter, was I correctly understanding the government's position in this case, that since it's determined that he has a personality disorder in service, that's the end of the issue. The personality disorder isn't compensable, hence the whole question about the presumption doesn't apply. That's exactly right, Your Honor. And the better it is on the web, the more consistent with 3.03C. What is the purpose of 3.03C in that case? The talk which has been discussed on Saturday has been service to the disability. No, it's a disservice because it's not talked about. One of the reasons it's a disservice is the point of it. What is the point of it? Yeah, if we don't look to see whether the personality disorder is a disservice. Well, what the record says is that if you have a personality disorder, as a matter of law, you treat it as a disservice, and therefore the presumption of sound condition does not apply. The Veterans Court explicitly stated this in its decision, these met after 5.16. It said, a personality disorder is not a type of disease or injury-related defect to which the presumption of sound does not apply. When it's particularly important here, because this court in Terry explicitly stated it was adopting the opinion. So, although it's a Veterans Court opinion, it's very important, and it's entirely consistent with everything we say here today. Because, as Greg said, a personality disorder is not an injury or a disease. That is very important because of the basis. So, this doctor is saying, well, then why is there any discussion of personality disorders in 3.03c? I mean, he can correct me if my misunderstanding is the focus of his inquiry, but I understood him. Okay, fine. Then why do we talk about personality disorder in 3.03c if it's never compensable? I think to make it clear. He said to make it clear. Do you think you break up 3.03c in your opinion? Well, the last sentence says that. I think the last sentence makes it very clear. It says it's not an injury or disease within the meaning of the act. Section 1110, then there's the next step. It says, in order to be compensable under the act, it has to be an injury or a disease. And then the presumption of sound conditions in Section 1111 in its preface says, with respect to incorporating Section 1110, that Section 1111 is expressly, by its own language, stating that it is conditioned upon being an injury or disease within the meaning of Section 1110. So, to put these together, you have a very clear indication of intent. The only injuries or diseases are compensable, either because they were incurred or aggravated, and the presumption of only five injuries or diseases. Now, I guess it would be possible that one reason why you would focus on the presumption with respect to a personality disorder is that, presumably, you might have a question of a personality disorder that was aggravated during service that then escalated into something more severe, like a stress disorder or something. Well, I think what the regulation is saying is that, and the general counsel is actually going to the medicine of this, that a disease is more defined as something that can either get worse or get better, whereas a personality disorder is something that sort of speaks to that. But I think Your Honor's situation is really, by definition, a personality disorder can't do that. Now, if it leads to another condition, to a psychiatric disorder, which is not schizophrenia, for example, if that's a set of injuries, that is compensable. And, you know, the bottom line here, as Your Honor indicated in your question, is that the board in 1988 concluded that, quote, any psychiatric symptoms present during service were associated with a personality disorder, end quote. And the record evidence, quote, does not demonstrate that the better psychiatric symptoms are associated with other than a personality disorder, end quote. But then your problem is, in your own definition, a personality disorder is a condition that has to happen completely. So it doesn't have to be during practice. In other words, if it arose for the first time during service, it wouldn't be during practice. There seems to be more conviction that it has to be something that's been going on for a long time. And why doesn't this result in the fact that it has to be something that's been going on for a long time, and you need to remediate the state of the service? That is a characteristic of the things surrounding it. It's kind of like the economic definition of recession. It has to be, by definition, it has to be a recurrence for six months. But the first day, you'll see economists coming and saying we're in recession. It doesn't mean that that first day was a recession. It may mean you need evidence to come to the diagnosis. In fact, in that section on personality disorders in the DSM-IV, it describes the fact that sometimes these personality disorders do not come to clinical attention until early adulthood or even later. That doesn't mean it didn't have a personality disorder all along. It just means a medical criteria for how to diagnose it. Of course, by definition, it has to be something you've always had. Well, I think that's the justification. That's the rationale in that next-to-last sentence in Section 303. So it's not a personality disorder if you didn't have it in your whole life? It is a—well, by definition, you had it your whole life. It's just a question of whether or not it was manifested. Well, that's the problem. You have to have it your whole life. 303C means that it's got to show you have working women in the service. Well, I don't read 303C as saying that. I'm saying that a personality disorder is not an injury or a disease. And that next-to-last sentence is saying why we are saying that personalities are not injuries or diseases. The reason we're saying that is that these are characteristics of a personality disorder. So if at 18 years old, the first symptoms you have are manifesting themselves, that doesn't mean you don't have a personality disorder. That may mean that it's difficult to diagnose a personality disorder. But that's a medical question. That's for the doctors. And for the doctors to come in and look at something and say, what we're seeing here is a personality disorder. Now, again, this foreign decision was in 1988, which was 20-something years after these first symptoms manifested themselves. So by that time, by 1988, clearly you did have this long term history of having a personality disorder. So clearly by that time, all the definitions were met. But to conclude from that, that personality is an injury or a disease, personality disorder is an injury or a disease, it really comes down to, and I'd like to give one closing sentence, there's really a challenge here to diagnose. Ultimately, what Mr. Morris's challenge is, is a diagnosis. And on pages 12 and 13 of Mr. Morris's reply, it becomes very obvious that that's what his claim ultimately is. He said, there must be evidence of a pre-service disability or a personality disorder in order to make a provision. Well, that's because he said there was no personality disorder. He's ultimately saying there was no personality disorder, and that is a challenge to the diagnosis of the disorder. And he repeatedly said, based on section 7 of 292D, for example, a condom disorder, this is not going to be your solution to this disorder. And for these reasons, you have the right to a court order if the decision is made. Thank you. Well, we expect them to be able to accept that they don't want to listen to their own regulation. They don't want to have you focus on the regulation. They want you to look at 4.9. They want you to look at 4.25. They want you to look at 4.27. But it's 3.303C, which defines personality disorder. And it says that it must have existed prior to service. This case is the perfect example for why the presumption is necessary. It was ultimately accomplished by Mr. Morris because he was able to show that he didn't have a personality disorder prior to service, and they gave him the benefits. If they had afforded him the presumption in the first instance, he wouldn't have been denied because there was evidence in the record that related the symptoms that were described, regardless of the label, to his post-service compensable disability. And that's the disability that he is service-connected for and should have been service-connected for. This is about the VA's own regulation, which says it must be a lifelong pattern and it must be shown to have existed prior to service. What they want is for this court to adopt a 4.9 notion of race-citizen. If personality disorder is mentioned in the record, that's it. It's over. It can't be compensable. That's not what 3.303C said. Unless you have any further questions, I'd like to end the hearing. Thank you, Mr. President.